CORA STOKES,

     Plaintiff,

v.

HARIBO OF AMERICA, INC.

     Defendant.

**COMPLAINT**

Civil Action No.

[Trial By Jury Demanded]

## NATURE OF THE ACTION

1.  This is an action under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 ("ADA") and the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2615(a)(1) ("FMLA") to correct unlawful employment practices, to compensate, and make whole Cora Stokes ("Ms. Stokes" or "Plaintiff"), who has been aggrieved by those unlawful employment practices. Defendant HARIBO of America, Inc. ("HARIBO") unlawfully discriminated against Cora Stokes based on her disability and for exercising her rights under the FMLA by unlawfully terminating her employment.

## JURISDICTION AND VENUE

2.  This Court has original jurisdiction in this action pursuant to 28 U.S.C. § 1331, as the matter in controversy is brought pursuant to the ADA and FMLA.

3.  Venue is proper in this judicial district under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3), because Ms. Stokes was employed within the Eastern District of Wisconsin judicial district by HARIBO, and because the unlawful employment practices were committed within this judicial district.

1

**PARTIES**

4. Ms. Stokes was and is an adult female residing in Wisconsin, and she was an employee of HARIBO at all times relevant hereto.

5. HARIBO is a manufacturer of gummy candies sold in approximately 120 countries worldwide. HARIBO has sixteen manufacturing plants worldwide, including one in Pleasant Prairie, Wisconsin. HARIBO was and is engaged in industry affecting commerce within the meaning of Title VII, 42 U.S.C. § 2000e-(b), (g) and (h).

**STATEMENT OF FACTS**

6. HARIBO hired Ms. Stokes as Machine/Packaging Operator on or about December 13, 2022, for work in its Pleasant Prairie plant.

7. From the outset of her employment, Ms. Stokes consistently demonstrated success in her Machine/Packaging Operator role.

8. Ms. Stokes's performance evaluations contained several comments from evaluators, such as, "Cora has done an excellent job training the new hire," "speaks up when something is unsafe or doesn't seem right," and "able to work efficiently with minimal/no supervision."

9. Around January of 2024, Ms. Stokes developed Generalized Anxiety Disorder (GAD) and depressive disorder.

10. These conditions qualified Ms. Stokes as an individual with a disability pursuant to the ADA Amendments Act of 2008 (ADAAA), as they substantially impaired one or more of her major life activities.

11. In June 2024, Ms. Stokes sought to utilize her FMLA job protection to manage her disabilities.

2

12. Ms. Stokes submitted her medical certification to HARIBO, pursuant to 29 U.S.C. 2614(c)(3), on May 15, 2024.

13. The certification completed by her physician established that, due to her conditions, it was medically necessary for Ms. Stokes to be absent from work on an intermittent basis (periodically), for any episodes of incapacity, *i.e.*, episodic flare-ups.

14. The terms of Ms. Stokes's intermittent FMLA further provided that over the next six (6) months, Ms. Stokes was allowed two (2) episodes of incapacity per month, with three (3) days per episode. This allotted time was to be renewed every six (6) months.

15. The certification was accepted by HARIBO's human resources department ("HR") in June 2024.

16. Despite the acceptance by HR, Ms. Stokes was mistreated and discriminated against when taking leave.

17. Whenever Ms. Stokes would return from her FMLA time, her supervisor, Mr. Todd Steele ("Mr. Steele"), would give her undesirable assignments.

18. Upon Ms. Stokes's return to work following her FMLA days, Mr. Steele would assign her machines that no other operator would want to work on. Mr. Steele would also assign her tasks that were ordinarily outside of the scope of her employment. These actions by her supervisor were taken to dissuade Ms. Stokes from using her federally protected leave.

19. Ms. Stokes took the retaliatory punishment in stride, but she let Mr. Steele know that she felt as though she was being discriminated against for taking protected time off.

20. Ms. Stokes experienced a death in her family (her uncle) later in 2024, and she took bereavement leave on November 21, 22, and 25 of 2024.

3

21. During her bereavement leave, Ms. Stokes experienced a flare-up of her disabilities and sought to use FMLA days on November 26 and 27, 2024. Ms. Stokes had only used three (3) days that month and thus had three (3) additional available days.

22. HARIBO observed the Thanksgiving holiday on November 28 and 29, 2024. In November, Ms. Stokes used a total of five (5) FMLA days out of the six (6) allotted to her.

23. Ms. Stokes used three (3) FMLA days from December 2 through December 4, 2024.

24. When she reported to work on December 5, 2024, Ms. Stokes was accosted by HR representative Ms. Mari Anderson ("Ms. Anderson"), and she was accused of a "no call no show" on November 23, 2024 – the day of her uncle's funeral.

25. Ms. Stokes explained that it was the day of her uncle's funeral, yet Ms. Anderson required that Ms. Stokes present an obituary as proof, and Ms. Stokes did so.

26. Ms. Stokes reached out to HR Director Toni Hansen ("Ms. Hansen"), who agreed that November 23, 2024, was not a "no call no show."

27. Nevertheless, Ms. Stokes was terminated on December 5, 2024. Ms. Hansen conveyed to Ms. Stokes that her position "could not be redeemed." Ms. Hansen told Ms. Stokes that she was terminated for an FMLA violation despite Ms. Stokes not exceeding her allotted days off or otherwise violating the parameters of her approved accommodation.

28. Ms. Hansen subsequently changed the justification for termination to violations of HARIBO's attendance policy despite Ms. Stokes not exceeding the maximum number of "points" assigned for attendance violations.

29. Ms. Stokes was terminated one day after returning from protected FMLA leave.

30. While HARIBO gave shifting, ostensibly legal, justifications for terminating Ms. Stokes, it terminated her because of her disability and for using her federally protected medical leave.

## ADMINISTRATIVE EXHAUSTION

31. On June 23, 2025, Ms. Stokes filed a Complaint with Equal Employment Opportunity Commission, EEOC Case No. 443-2025-00857.

32. The Complaint was filed within the applicable 300-day time limitation.

33. On March 4, 2026, the EEOC dismissed Ms. Stokes's charge and mailed a Notice of Right to Sue for Charge No. 443-2025-00857.

34. With all conditions precedent being met, this action is being commenced within the time provided by the Notice of Right to Sue.

## CAUSES OF ACTION

35. Ms. Stokes realleges and reincorporates by reference all preceding paragraphs as if fully set forth herein.

36. The conduct described above constituted unlawful interference with Ms. Stokes's attempts to exercise her FMLA rights under 29 U.S.C. § 2615(a)(1).

37. The conduct described above constituted unlawful retaliation by HARIBO against Ms. Stokes for exercising her FMLA rights under 29 U.S.C. § 2615(a)(2).

38. The conduct described above constituted discrimination based on Ms. Stokes's disability, in violation of the ADA under 42 U.S.C. § 12101.

39. HARIBO's unlawful employment practices were done with intent, malice, and reckless indifference to the federally protected rights of Ms. Stokes, warranting punitive damages.

40.     As a direct result of the unlawful employment practices, Ms. Stokes sustained wage loss, emotional distress, and other non-pecuniary damages. Ms. Stokes is entitled to reinstatement, general and compensatory damages in amounts to be proven at trial, and other equitable relief.

### PRAYER FOR RELIEF

WHEREFORE, Cora Stokes respectfully prays that this Court enter judgment in Ms. Stokes's favor and against HARIBO, as follows:

1.     Order HARIBO to make Ms. Stokes whole by providing, *inter alia*, full back pay, lost past and future earning potential, reinstatement or front pay, prejudgment interest, other pecuniary damages, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

2.     Order HARIBO to pay compensatory damages for pain and suffering, embarrassment, emotional distress, and other non-pecuniary losses;

3.     Order trial by jury on all issues so triable;

4.     Grant injunctive relief against HARIBO;

5.     Order HARIBO to pay punitive damages;

6.     Grant such further relief as the Court deems necessary and just; and

7.     Grant plaintiff her attorney fees and costs pursuant to 42 U.S.C. 2000e-5(k).


Dated at Milwaukee, Wisconsin, this 1st day of June, 2026.


                              FIRST, ALBRECHT & BLONDIS, s.c.
                              Attorneys for Cora Stokes


                              s/ Christopher G. Meadows
                              Christopher G. Meadows, SBN: 1055144
                              Bryn I. Baker, SBN: 1102534


6

158 N. Broadway, Suite 600
Milwaukee, Wisconsin 53202
Phone: (414)271-1972
Fax:(414)271-1511
cmeadows@fabattorneys.com
bbaker@fabattorneys.com

7